JUDGE FRANK MONTALVO

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION



| | |
|---|---|
| **MABEL ARREDONDO,** | §<br>§<br>§ |
| **Plaintiff,** | §<br>§ |
| v. | §<br>§ |
| **DERMADASH SERVICES LLC**<br>A Texas Limited Liability Corporation<br>**FRED M. BATTAH, MICHAEL Q. BATTAH**<br>**And SHALIMAR MAAKAR,** | §<br>§<br>§<br>§<br>§ |
| **Defendants.** | §<br>§<br>§ |

# EP22CV0169

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. The Plaintiff is MABEL ARREDONDO ("Plaintiff") a natural person, resident of the

   Western District of Texas, and was present in Texas for all calls, in this case in El Paso

   County, Texas.

2. Defendant DERMA DASH LLC, ("DERMA DASH") is a corporation organized and

   existing under the laws of Texas and can be served via registered agent S. Carl Friedsam at

   300 Convent Street, 25ᵗʰ Floor, San Antonio, TX 78205.

3. Defendant FRED M. BATTAH ("F. BATTAH") is a natural person, resident of Texas, and

   upon information and belief is the primary owner, officer and director for DERMA DASH,

   and can be served at 505 Harrison Ave., San Antonio, TX 78209.

4. Defendant MICHEAL Q. BATTAH ("M. BATTAH") is a natural person, resident of Texas,

   and upon information and belief is the owner, officer and director for DERMA DASH, and

can be served at 122 Geneseo Road, San Antonio, TX 78209.

5.  Defendant SHALIMAR MAAKAR ("MAAKAR") is a natural person, resident of Texas, and upon information and belief is the owner, officer and director for DERMA DASH, and can be served at 855 Contour Drive, San Antonio, TX 78212.

6.

### JURISDICTION AND VENUE

7.  **Jurisdiction.** This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case.

8.  **Personal Jurisdiction.** This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

9.  **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

10. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above-named defendants to the Plaintiff, a Texas resident.

2

## THE TELEPHONE CONSUMER PROTECTION ACT

### OF 1991, 47 U.S.C. § 227

11. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

13. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

14. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

15. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

16. The TCPA provides a private cause of action to persons who receive calls in violation of §

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

17. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

18. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

19. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

20. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

4

21. The FCC confirmed this principle in 2013 when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

22. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

23. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code § 302.101

24. The Texas Business and Commerce Code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in the state of Texas.

25. The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

26. Texas Business and Commerce Code § 302.101 provides a private right of action. A

violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter

E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by

Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code

302.303.

## FACTUAL ALLEGATIONS

27. At all times material hereto Plaintiff's number was successfully registered on the Do-Not-
Call Registry.

28. Since at least 2018 Defendants DERMA DASH, F. BATTAH, M. BATTAH, and MAAKAR
have facilitated, marketed, directed, and enabled the "pharmacy services" activities of
Defendant Derma Dash.

29. Defendants F. BATTAH, M. BATTAH, and MAAKAR are officers and directors of DERMA
DASH.

30. The Plaintiff has received at least 13 calls over 2 days to her cell phone ending in 8219
without her prior express consent and not related to an emergency purpose, selling "pain
relief medication" products and services from Defendant DERMA DASH.

31. On April 23, 2022, Plaintiff received a phone call from phone number 940-356-1935.
Plaintiff answered the phone and upon answering was asked if Plaintiff had received the pain
medications that had been sent to her address. Plaintiff advised she had not received any
medications. The telemarketer proceeded by asking questions about Plaintiff's health, well-
being, and medical history. The Telemarketer then advised Plaintiff that medication would be
delivered to her home, but someone else would be calling to verify some information.

32. The telemarketer in ¶ 31 did not properly identify themselves or on whose behalf the calls
were being made in violation of 47 C.F.R. 64.1200(d)(4). Plaintiff did not consent to receive

6

any follow-up calls from the telemarketer or any of the telemarketer's affiliates.

33. Plaintiff later received a call from Harvey advising that the medication will be sent to

Plaintiff's home address in the next few days and that a document that needed to be signed

would be sent via text.

34. Plaintiff then received 5 text messages from phone number 888-586-2090 prompting Plaintiff

to sign a medical authorization form.

35. Plaintiff is not on any prescribed medications and has never been examined by any doctor

associated with the Defendants.  Plaintiff is not in any pain and does not require medical

attention or service of any sort.

36. Defendants attempted to get Plaintiff to speak to a "medical professional" who would explain

the medication they wanted to prescribe to Plaintiff despite Plaintiff not ever being diagnosed

with any condition requiring pain medication.

37. Plaintiff received 5 additional unauthorized text messages from Harvey prompting Plaintiff
    to consent to the unnecessary medication:

    "Hello Mrs. Aranda"
    "This is Harvey.  I was trying to reach you about the pain cream and other supplies.
    Everything is almost done. Your supplies will be delivered out to you in this coming
    week.  I just need to have a quick call-in order to connect you with the doctor"
    "Can I give you a call right away?"
    "Oh, so in that case we'll catch up on it later than"

38. On April 25, 2022, Harvey texted again "Mrs. Aranda?"

39. Plaintiff did not want or need pain medication.  However, in order to cease harassment from

the anonymous robocallers, such as the Defendants, Plaintiff told the representative she

needed pain medication for the sole purpose of identifying who was calling and/or the

company who was responsible for calling.

40. Table below displays calls made to Plaintiff by defendants:

7

| Number : | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | 04/23/2020 | 12:40 PM | 940-356-1935 | Random call spoof number asking if Plaintiff had received pain meds. |
| 2 | 04/23/2022 | 1:04 AM | 940-232-8985 | Received a callback and was transferred to live agent to discuss meds and advised that a medical authorization was going to be sent to my phone via text |
| 3 | 04/23/2022 | 1:36 AM | 940-232-2934 | Received a call back and was transferred to a live agent to discuss meds and advised that a medical authorization was going to be sent to my phone via text |
| 4 | 4/23/2022 | 2:31 P.M. | 469-297-2492 | Text message from Harvey: Mrs. Aranda? |
| 5 | 4/23/2022 | 1:36 P.M. | 888-586-2090 | Text message to click and sign a link for Caresync Patient Consent |
| 6 | 4/23/2022 | 1:36 P.M. | 888-586-2090 | Text message to click and sign a link for Caresync Patient Consent |
| 7 | 4/23/2022 | 1:36 P.M. | 888-586-2090 | Text message to click and sign a link for Caresync Patient Consent |
| 8 | 4/23/2022 | 1:36 P.M. | 888-586-2090 | Text message to click and sign a link for Caresync Patient Consent |
| 9 | 4/23/2022 | 3:55 P.M. | 888-586-2090 | Text message to click and sign a link for Caresync Patient Consent |
| 10 | 4/23/2022 | 2:31 P.M. | 469-297-2492 | Text message from Harvey: This is Harvey. I was trying to reach you about the pain cream and other supplies. Everything is almost done. Your supplies will be delivered out to you in this coming week. I just need a quick call in order to connect you with |

| | | | | | the doctor. |
|---|---|---|---|---|---|
| 11 | 4/23/2022 | 2:31 P.M. | 469-297-2492 | Text message from Harvey: <br><br> Can I give you a call right away. | |
| 12 | 4/23/2022 | 2:31 P.M. | 469-297-2492 | Text message from Harvey: Oh, so in that case we'll catch up on it later then. | |
| 13 | 4/25/2022 | 11:45 AM. | 469-297-2492 | Text message from Harvey: <br> Mrs. Aranda? | |

41. Defendants collectively knowingly and willfully mislead Plaintiff with respect to the
    issuance of pain medications.

42. Plaintiff searched the Texas Secretary of State website and verified that Defendants do not
    and have not ever had a solicitation registration certificate on file with the Texas Secretary of
    State as required to make telephone solicitations to Texas residents.  Plaintiff is a Texas
    resident.

43. Defendants initiated numerous unsolicited telephone calls, made unlawful telemarketing
    sales pitches regarding pain medication, and unlawfully collected Plaintiff's personal
    information, such as social security number, email address, and home address.

44. Defendants participated in, facilitated, directed, authorized, knew of, or willfully ignored the
    harassing telemarketer calls, while knowing facts that required a reasonable person to
    investigate further, and approved, and ratified the conduct of their employees, agents, and co-
    conspirators to engage in the false and misleading sales practices and unlawful telemarketer
    calls.

45. Each and every call was placed without the maintenance of an internal do-not-call policy.
    Each and every call failed to identify the telemarketers and parties they were calling on
    behalf of. Each and every call was placed without training their agents/employees on the use

of an internal do-not-call policy.

46. Plaintiff has limited data storage capacity on her cellular telephone. Incoming telemarketing
calls consumed part of this capacity.

47. No emergency necessitated the calls.

48. None of the defendants ever sent Plaintiff any do-not-call policy.  Plaintiff sent an internal
do-not-call policy request to info@dermadash.com on May 10, 2022.

49. On information and belief, the Defendants did not have a written do-not-call policy while it
was sending Plaintiff the unsolicited calls.

50. On information and belief, the Defendants did not train its agents who engaged in
telemarketing on the existence and use of any do-not-call list.

### THE SELLERS SHOULD BE HELD LIABLE TO UPHOLD THE

### DETERRENT EFFECT AND PURPOSE OF THE TCPA

51. As the court ruled in Jackson v Caribbean Cruise Line, Inc., the defendant sellers should be
held liable for their violations of the TCPA. Courts have looked at the purpose of the TCPA
and found that not holding the sellers liable through vicarious liability would undermine the
purpose of the TCPA.

### VICARIOUS LIABILITY

52. Defendants are vicariously liable under the theories of implied authority, apparent authority,
and ratification, and as well as liable because any other result would impair the underlying
purpose of the TCPA.

53. "A[n] entity may be held vicariously liable for violations of the TCPA 'under a broad range
of agency principles, including not only formal agency, but also principles of apparent
authority and ratification.'" Aranda v. Caribbean Cruise Line, Inc., 179 F. Supp. 3d 817, 831
(N.D. Ill. 2016) (Quoting In re Joint Petition filed by Dish Network, LLC, 28 F.C.C. R. 6574,
6582 ¶ 28 (2013)).  "Formal Agency" in this context means actual authority, which may be

10

express or implied. Id,.

54. Defendants gave express authority and apparent authority to telemarketers with full knowledge the administration of sales and solicitation of sales of the business funding services marketed as a result of the contract would be marketed using an automatic telephone dialing system ("ATDS").

55. Defendants have ratified the conduct and behavior of the telemarketers by repeatedly signing contracts to hire them to administer sales and the solicitation of sales of their business funding services with the full knowledge and expectation Defendants would violate the TCPA.

## DEFENDANTS F. BATTAH, M. BATTAHM AND MAAKAR ARE PERSONALLY LIABLE

56. "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2ⁿᵈ Cir.1985)

57. The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motors Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5ᵗʰ Cir. 1992).  The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5ᵗʰ Cirt. 1985) (Citing *Escude Cruz v. Ortho*

11

*Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1ˢᵗ Cir.1980)) (Citing *Texas v. American Blastfax,*

*Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

58.   Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.

> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful contuct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is fare more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

59.   The Same Court held that corporate officers were also personally liable for DTPA violations:

> The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct…..For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ˢᵀ Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the

12

corporation......Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

60.  At all times material to the Complaint, acting alone or in concert with others, Defendant F. BATTAH has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant DERMA DASH, including the acts or practices set forth in this Complaint.

61.  At all times material to the Complaint, acting alone or in concert with others, Defendant M. BATTAH has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant DERMA DASH, including the acts or practices set forth in this Complaint.

62.    At all times material to the Complaint, acting alone or in concert with others, Defendant MAAKAR has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant DERMA DASH, including the acts or practices set forth in this Complaint.

63.  Defendants F. BATTAH, M. BATTAH, and MAAKAR are the principal director and operator of Defendant DERMA DASH and control the day-to-day operations of DERMADASH and directed their employees, agents, salespersons, and solicitors to make TCPA violating phone calls and to solicit "student loan forgiveness" and "student loan consolidation" services.

64.  Defendants F. BATTAH, M. BATTAH, and MAAKAR approved the telemarketing scripts, signed the contracts, paid commissions for the illegal behavior, and directed the illegal calls to be made for their financial benefit.

13

65. Defendant F. BATTAH, M. BATTAH, and MAAKAR are not mere bystanders. They are the mastermind that schemed, planned, directed, initiated, and controlled the illegal and fraudulent behavior.

66. Defendant F. BATTAH, M. BATTAH, and MAAKAR area well aware Defendants' conduct violated the TCPA and Tex. DPTA and refused to alter their behavior. Defendants are the sole director of DERMA DASH and the only person with the power to make the unlawful, fraudulent, and unethical behavior stop. Yet, they have taken no steps to stop the behavior because the behavior benefits them financially. Defendants break the law with their eyes and pocketbooks wide open.

67. Defendant F. BATTAH, M. BATTAH, and MAAKAR, and DERMA DASH should be held jointly and severally liable for both the TCPA violations and Tex. Bus. Com. Code 302.101 via Tex. DTPA because they actually committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct.

68. Defendant F. BATTAH, M. BATTAH, and MAAKAR should be held personally liable because to do otherwise would simply allow the individuals to simply dissolve DERMA DASH and set up a new corporation and repeat their conduct. This would result in both the TCPA and DTPA being unenforceable.

### INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
### AS A RESULT OF THE CALLS

69. Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

70. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

14

71. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

72. Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

73. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

### Plaintiff's cell phone is a residential number

74. The calls were to Plaintiff's cellular phone (915) 999-8219 which is Plaintiff's personal cell phone that she uses for personal, family, and household use. Plaintiff maintains no landline phones at her residence and has not done so for at least 5 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses her cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has her cell phone registered in her personal name, pays the cell phone from her personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

75. The actions of the Defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violates 47 USC 227(b). The calls by the Defendants violated Texas law by placing calls with a pre-recorded message to a cell phone which violates 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

76. The calls by the Defendants violated Texas law by spoofing the caller IDs per 47 USC 227(e) which in turn violates the Texas statute.

15

### Violations of the Texas Business and Commerce Code § 302.101

77. The actions of the Defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

78. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## I. FIRST CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

1.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

   a.     a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

   b.     training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

   c.     in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

3.      Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

4.      Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

5.      Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

## II. SECOND CLAIM FOR RELIEF:

## Violations of the TCPA "Sales/DNC" Prohibitions 47 C.F.R. § 64.1200(c)

## (Against All Defendants)

1.      Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.      Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F) and 47 C.F.R. § 64.1200(c)(2).

3.      Plaintiff was statutorily damaged at least three (3) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telephone calls described above, in the amount of $500 per call.

4.      Plaintiff is entitled to an award up to $1500 in damages for each knowing and willful violation of 47 U.S.C. § 227(c)(3)(F).

---

[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

## III. THIRD CLAIM FOR RELIEF:

### Violations of The Texas Business and Commerce Code 305.053

1.      Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Plaintiff's cellular telephone numbers without her prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

3.      Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

4.      Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

## IV. FOURTH CLAIM FOR RELIEF:

### Violations of The Texas Business and Commerce Code 302.101

1.      Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making

18

non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

3.      Plaintiff is entitled to an award of up to $5,000 in damages for each violation of Texas Business and Commerce Code 302.302.

4.      Plaintiff is entitled to an award for all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees and attorney's fees.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff MABEL ARREDONDO prays for judgment against the defendants jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.      An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for six (6) calls.

E.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.      An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G.      An award to Plaintiff of damages, as allowed by law under the TCPA;

19

H.     An award to Plaintiff of interest, costs and attorneys' fees, as allowed by law and equity;

I.     Such further relief as the Court deems necessary, just, and proper.

May 12, 2022,          Respectfully submitted,

*Mabel Arredondo*

MABEL ARREDONDO
Plaintiff, Pro Se
9328 Lait Drive
El Paso, TX 79925
915-999-8219

Plaintiff hereby demands a jury trial for all claims so triable.

May 12, 2022,          Respectfully submitted,

*Mabel Arredondo*

MABEL ARREDONDO
Plaintiff, Pro Se
9328 Lait Drive
El Paso, TX 79925
915-999-8219

20